IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NICHOLAS WOLVERTON,

    Plaintiff,

v.

AVERITT EXPRESS, INC.,

    Defendant.

Civil Action No.


JURY TRIAL DEMANDED

## **COMPLAINT**

COMES NOW, Plaintiff Nicholas Wolverton ("Plaintiff" or "Mr. Wolverton"), by and through undersigned counsel, and files his Complaint against Defendant Averitt Express, Inc. ("Defendant"), and shows the Court as follows:

## **NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages and injunctive relief for Defendant's violation of his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq* and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA").

1

## JURISDICTION AND VENUE

### 2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117.

### 3.

Defendant does business in this judicial District and Division and has a registered agent within this District and Division.   Additionally, the unlawful employment practices alleged in this Complaint were committed and Defendant maintained records of Plaintiff's employment within this District and Division.   In accordance with 28 U.S.C. § 1391 and 42 U.S.C. § 12117(a), incorporating by reference 42 U.S.C. § 2000e-5(f)(3), venue is appropriate in this Court.

## PARTIES

### 4.

Plaintiff is a citizen of the United States of America and is subject to the jurisdiction of this Court.

### 5.

During the relevant time period, defined herein as August 6, 2018 through October 1, 2019, Plaintiff was employed by Defendant.

6.

Defendant is a foreign corporation licensed to conduct business in this district.

7.

Defendant employed Plaintiff during the relevant time period.

8.

Defendant is qualified and licensed to do business in Georgia, and at all times

material hereto has conducted business within this District

9.

Plaintiff is an "eligible employee" within the meaning of the FMLA, 29

U.S.C. § 2601 *et seq*., in that he had been employed with Defendant for more than

12 months and worked more than 1250 hours in the 12 months preceding his request

for FMLA.

10.

Plaintiff is a citizen of the United States of America and a resident of the State

of Georgia and at all such times, Plaintiff was an "employee" of Defendant as

defined under 42 U.S.C. § 12111(4).

11.

During all times relevant hereto, Defendant has employed fifty or more

employees, within a 75-mile radius of Plaintiff's employment, such that Plaintiff is

an "eligible employee" under the requisite requirements under the FMLA.

12.

During the year of Plaintiff's termination and the year immediately preceding his termination, Defendant employed fifteen (15) or more employees for each working day in each of 20 or more calendar weeks. Defendant is therefore a covered employer subject to the jurisdiction of Title I of the ADA in accordance with 42 U.S.C. § 12111(5).

13.

Defendant may be served by delivering a copy of the summons and complaint to its Registered Agent, Paranet Corporate Services, located at 3675 Crestwood Parkway, Suite 350, Duluth, GA 30096.

**ADMINISTRATIVE PROCEDURES**

14.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on October 30, 2019.

15.

The EEOC issued a "Notice of Right to Sue" on March 11, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

16.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

17.

All conditions precedent to bringing this action have been satisfied and/or waived.

## FACTUAL ALLEGATIONS

18.

Defendant hired Mr. Wolverton on or about August 6, 2018, as a CDL Driver.

19.

Mr. Wolverton has one or more mental impairments which limit one or more major life activities, including but not limited to learning, concentrating, thinking, communicating, and working.

20.

More specifically, Mr. Wolverton suffers from depression, mood disorder, panic disorder, and severe anxiety.

21.

Defendant was made aware of Mr. Wolverton's disabilities when hired due to his medical DOT card.

22.

Despite having already been cleared, Mr. Wolverton was required to get a physical from Defendant's doctor, Dr. Tony Hudson.

23.

When Mr. Wolverton met with Dr. Hudson, Dr. Hudson told him that he should not have anxiety because he is a young guy. He also said Mr. Wolverton had nothing to be depressed about and should calm down and not have anxiety.

24.

On or about August 6, 2018, Defendant told Mr. Wolverton that he had to discontinue use of two of his prescriptions, Vistaril and Remeron.

25.

Against Mr. Wolverton's doctor's advice, and despite Mr. Wolverton obtaining a doctor's note affirming that neither prescription impacted his ability to drive, Mr. Wolverton felt he had no choice but to stop taking the medications.

26.

Mr. Wolverton symptoms worsened once he stopped taking his prescribed medications.

27.

On or about September 21, 2018, Mr. Wolverton requested the use of an emotional support animal to help alleviate his symptoms.

28.

Defendant denied Plaintiff's request.

29.

In August 2019 Mr. Wolverton began the process of renewing his medical DOT card in order to be cleared to work.

30.

Mr. Wolverton was legally cleared to drive by a local doctor who was certified to perform DOT physicals.

31.

Again, Defendant required that Mr. Wolverton stop taking a third medication that he had been prescribed to control his symptoms.

32.

Again, this medication had no impact on his ability to perform the duties of his job, i.e. to drive.

33.

Defendant required that Mr. Wolverton obtain a note from his doctor affirming that he was not required to take the third medication before they allowed him to return to work.

34.

Mr. Wolverton complained to his supervisor and to HR about Defendant's interference with how he managed his disability.

35.

On September 30, 2019, Mr. Wolverton became very ill.  He texted his supervisor, Vernon Smith, that he was seeking medical attention and would not be at work that day or the next.

36.

Mr. Smith responded that if Mr. Wolverton did not show up for work, even if he had a doctor's note, he would be terminated.

37.

Per Defendant's attendance policy, an excused absence, i.e., providing a doctor's excuse, counted as 1 disciplinary point.

38.

Mr. Smith first stated that Mr. Wolverton had three points left, then changed and said he only had one point.

39.

Mr. Wolverton challenged this assertion that he only had one disciplinary point left.

40.

Mr. Wolverton sought medical attention for his own serious health condition, laryngitis and sinusitis, on October 1, 2019.

41.

Mr. Wolverton's medical provider advised that he not return to work for four (4) days, and prescribed him medications that would have affected his ability to drive.

42.

Mr. Wolverton contacted Barbara Hurst with HR, who advised that he could apply for FMLA leave.

43.

Ms. Hurst told Mr. Wolverton that she would send him the FMLA paperwork and asked that he return it within 15 days.

44.

Ms. Hurst called Mr. Wolverton back later that day to inform him that he had been terminated that morning.

45.

Defendant terminated Mr. Wolverton before he was able to request medical leave for his own serious health condition.

46.

Defendant terminated Mr. Wolverton prior to his scheduled shift that evening.

47.

Mr. Wolverton was able to perform the essential duties of his position with a reasonable accommodation, i.e. medication to control symptoms related to his disability.

48.

Defendant refused to engage in the interactive process with Mr. Wolverton regarding his request for a medical accommodation.

49.

Furthermore, the Defendant interfered with Plaintiff's rights under the Family and Medical Leave Act by denying his requests for approved leave.

50.

The Defendant retaliated against Plaintiff for requesting medical leave by terminating his employment as a result of needing FMLA leave.

51.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

52.

Others outside the Plaintiff's protected class, i.e. employees not needing a medical accommodation and/or FMLA leave, were treated differently.

## CLAIMS FOR RELIEF
## COUNT I:  FMLA INTERFERENCE

53.

Plaintiff re-alleges paragraphs 18-52 as if set forth fully herein.

54.

Defendant is an 'employer' as defined by the FMLA.

55.

Plaintiff was an eligible employee under the FMLA.

56.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding his request for medical leave pursuant to the FMLA.

57.

Plaintiff was employed by Defendant for more than 12 months.

58.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

59.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

60.

Plaintiff had a medical condition that required Plaintiff to take time off work.

61.

Plaintiff had a serious medical condition as defined by the FMLA.

62.

Defendant received notice of Plaintiff's need for protected medical leave for his medical condition on September 30, 2019.

63.

Defendant terminated Plaintiff's employment as a result of his requests for medical leave, and/or to avoid having to grant Plaintiff his statutory right to protected medical leave under the FMLA.

64.

Defendant falsely claimed to the United States Equal Employment Opportunity Commission that Plaintiff's physician did not certify him as in need of more than three consecutive days absence from work, a criminal violation of 18 U.S.C. § 1001 and § 1505. Defendant's violation of 42 U.S.C. § 1001 and § 1505 is a crime involving a dishonest act, a false statement, and an effort to obstruct justice and is evidence of Defendant's pretextual motivation in terminating Plaintiff's employment.

65.

Defendant terminated Plaintiff's employment because of his request for medical leave, and/or to avoid having to grant Plaintiff's right to protected medical leave, without affording him sufficient time to complete his FMLA leave request paperwork or provide Defendant with the medical certification from his physician of his need for leave from September 30 to October 3, inclusive, thereby interfering with his rights under the FMLA.

66.

Defendant interfered with rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., entitling Plaintiff to all appropriate relief under the statute.

67.

The effect of Defendant's actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to him solely because of his right to leave under the FMLA.

68.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, liquidated damages, front pay or reinstatement, attorneys' fees and costs of litigation.

## COUNT II:  FMLA RETALIATION

69.

Plaintiff re-alleges paragraphs 18-52 as if set forth fully herein.

70.

Defendant is an 'employer' as defined by the FMLA.

71.

Plaintiff was an eligible employee under the FMLA.

72.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding his request for medical leave pursuant to the FMLA.

73.

Plaintiff was employed by Defendant for more than 12 months.

74.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

75.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

76.

Plaintiff had a serious health condition that required Plaintiff to take more than three consecutive days off from work.

77.

Plaintiff had a serious medical condition as defined by the FMLA.

78.

Defendant received notice of Plaintiff's need for protected medical leave for his own medical condition on September 30, 2019.

79.

Defendant falsely claimed to the United States Equal Employment Opportunity Commission that Plaintiff's physician did not certify him as in need of more than three consecutive days absence from work, a criminal violation of 18 U.S.C. § 1001 and § 1505. Defendant's violation of 42 U.S.C. § 1001 and § 1505, is a crime involving a dishonest act, a false statement, and an effort to obstruct justice and is evidence of Defendant's pretextual motivation in terminating Plaintiff's employment.

80.

Defendant terminated Plaintiff's employment because of his request for medical leave, and/or to avoid having to grant Plaintiff's right to protected medical leave, without affording him sufficient time to complete his FMLA leave request paperwork or provide Defendant with the medical certification from his physician of his need for leave from September 30 to October 3, inclusive, thereby interfering with his rights under the FMLA.

81.

Defendant's termination of Plaintiff's employment was causally related to his attempt to exercise his rights to protected medical leave pursuant to the FMLA.

82.

Defendant's termination of Plaintiff's employment based on his request for leave under the FMLA, which it pretextually argued was for false claims of alleged policy violations, constitutes unlawful retaliation against Plaintiff for his attempt to exercise his rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

83.

As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT III:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

84.

Plaintiff re-alleges paragraphs 18-52 as if set forth fully herein.

85.

Plaintiff has one or more mental impairments which limit one or more major life activities, including but not limited to learning, concentrating, thinking, communicating, and working.

86.

Plaintiff's mental impairments are "disabilities" within the meaning of the ADA, as amended.

87.

Defendant was aware of Plaintiff's disabilities.

88.

Defendant regarded Plaintiff as having a disability such that he is a person with a disability within the meaning of the ADA, as amended.

89.

Plaintiff has a record of having a disability such that he is a person with a disability within the meaning of the ADA, as amended.

90.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

91.

Defendant terminated Plaintiff's employment because of his disability, perceived disability, or record of having a disability.

92.

By terminating Plaintiff's employment because of his disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

93.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pretext for disability discrimination.

94.

Defendant falsely claimed to the United States Equal Employment Opportunity Commission that Plaintiff's physician did not certify him as in need of more than three consecutive days absence from work, a criminal violation of 18 U.S.C. § 1001 and § 1505. Defendant's violation of 42 U.S.C. § 1001 and § 1505, is a crime involving a dishonest act, a false statement, and an effort to obstruct justice and is evidence of Defendant's pretextual motivation in terminating Plaintiff's employment.

95.

Defendant treated other similarly situated employees outside Plaintiff's protected class more favorably.

96.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981A.

97.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

98.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and render him unemployed because of his disability.

99.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

100.

As a result of Defendant's discriminatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience,

humiliation, and other indignities.

### 101.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

### 102.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

### 103.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## **COUNT IV:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA**

### 104.

Plaintiff re-alleges paragraphs 18-52 as if set forth fully herein.

105.

Plaintiff has mental impairments which limits one or more major life activities, including but not limited to learning, concentrating, thinking, communicating, and working.

106.

Plaintiff's mental impairments are "disabilities" within the meaning of the ADA, as amended.

107.

Defendant was aware of Plaintiff's disabilities.

108.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

109.

Plaintiff was able to perform the essential functions of his job with a reasonable accommodation.

110.

Plaintiff requested that Defendant accommodate his disability by allowing him to take medical leave when his disability flared-up.

111.

Upon receiving Plaintiff's requests for an accommodation, Defendant failed to engage in any interactive process with Plaintiff regarding his request for a reasonable accommodation of his disability.

112.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

113.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

114.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

115.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, rendering him unemployed, and has otherwise adversely affected his status as an employee because of his disability.

116.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

117.

As a result of Defendant's discriminatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

118.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

119.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

120.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT V:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

121.

Plaintiff re-alleges paragraphs 18-52 as if set forth fully herein.

122.

Plaintiff has mental impairments which limits one or more major life activities, including but not limited to learning, concentrating, thinking, communicating, and working.

123.

Plaintiff's mental health impairments are "disabilities" within the meaning of the ADA, as amended.

124.

Defendant was aware of Plaintiff's disabilities.

125.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

126.

Defendant terminated Plaintiff for requesting an accommodation for his disability and/or perceived disability.

127.

Plaintiff's request for an accommodation of his disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

128.

Defendant retaliated against Plaintiff by terminating his employment on the basis of his request for an accommodation.

129.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

130.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

131.

Defendant falsely claimed to the United States Equal Employment Opportunity Commission that Plaintiff's physician did not certify him as in need of more than three consecutive days absence from work, a criminal violation of 18

U.S.C. § 1001 and § 1505.  Defendant's violation of 42 U.S.C. § 1001 and § 1505, is a crime involving a dishonest act, a false statement, and an effort to obstruct justice and is evidence of Defendant's pretextual motivation in terminating Plaintiff's employment.

132.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

133.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

134.

As a result of Defendant's retaliatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

135.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

27

136.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

137.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)        General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)        Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)        Special damages for lost wages and benefits and prejudgment interest thereon;

(d)      Liquidated damages under the FMLA in an amount equal to Plaintiff's lost wages and benefits of employment and prejudgment interest thereon;

(e)      Reasonable attorney's fees and expenses of litigation;

(f)      Trial by jury as to all issues;

(g)      Prejudgment and post judgment interest at the rate allowed by law;

(h)      Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(i)      Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(j)      All other relief to which he may be entitled.

Respectfully submitted the 8th day of June, 2021.

**BARRETT & FARAHANY**

 s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
Catherine Gavrilidis
Georgia Bar No. 565343

*Attorney for Nicholas Wolverton*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
matt@justiceatwork.com
catherine@justiceatwork.com